902 So.2d 942 (2005)
CITY OF MARY ESTHER and Florida League of Cities, Inc., Appellants,
v.
Ron McARTOR, City of Mary Esther and Preferred Governmental Claims Solutions, Appellees.
No. 1D04-2135.
District Court of Appeal of Florida, First District.
June 7, 2005.
*943 Douglas F. Miller of Clark, Partington, Hart, Larry, Bond & Stackhouse, Pensacola, for Appellants.
Stuart A. Christmas and V. Ross Spano of Christmas & Associates, P.A., Tallahassee, for City of Mary Esther/Preferred Governmental Claims Solutions. Jeffrey J. Lathem, Ft. Walton Beach, and Bill McCabe, Longwood, for Ron McArtor, Appellees.
PER CURIAM.
The dispute in this case arose from a determination by the Judge of Compensation Claims (JCC) that the City of Mary Esther and the workers' compensation carrier it employed before October 1, 2000, Florida League of Cities, Inc. (collectively E/C 1), was liable for the provision of benefits relating to cardiac complications suffered by the claimant in February 2001, and again in March 2003. The JCC found that the carrier that assumed risk on October 1, 2000, Preferred Governmental Solutions (E/C 2), was not liable because the claimant had received his full salary during his hospitalization and recovery and was, therefore, not disabled. In doing so, the JCC misapprehended the meaning of this court's earlier decisions. Accordingly, we must reverse and remand for further proceedings.
It is of no consequence that the claimant's first heart attack occurred in 1991 while E/C 1 provided workers' compensation coverage. At that time, the claimant was, and continues to be, a city firefighter entitled to the statutory presumption of compensability for coronary artery disease provided by section 112.18(1), Florida Statutes. Coronary artery disease is an occupational illness when suffered by a firefighter meeting the requirements of section 112.18(1). See Sledge v. City of Fort Lauderdale, 497 So.2d 1231, 1233 (Fla. 1st DCA 1986). Under section 440.151(5), Florida Statutes, the carrier on risk at the time of the last injurious exposure "shall alone be liable" when "compensation is payable for an occupational disease." In this case, the claimant's performance of his firefighting duties constituted the last injurious exposures before his periods of disablement in 2001 and 2003. See Sledge, 497 So.2d at 1232 n. 1. Thus, E/C 2, the carrier on risk during these periods, is liable for current benefits due the claimant. See Eastern Airlines, Inc. v. Crittenden, 596 So.2d 112 (Fla. 1st DCA 1992); Sunshine Truck Plaza/Camp Oil Co. v. Tucker, 395 So.2d 265 (Fla. 1st DCA 1981).
In finding E/C 2 not liable, the JCC concluded that the claimant had not yet suffered a disability during E/C 2's period of coverage because his condition had not resulted in a "diminution of earnings." The JCC relied upon this court's opinion in Sledge which stated, "Disablement and the commencement of the running of the limitations period occurs when the disease condition `... results in a stoppage or loss of earnings....'" 497 So.2d at 1233 (quoting *944 Sanders v. Fla. State Bd. of Conservation, 5 F.C.R. 193, cert. denied, 155 So.2d 551 (Fla.1963)). Based upon this language, the JCC concluded that the claimant was not disabled because the city continued to pay the claimant's salary during his hospitalization and recovery.
The definition of "disability" relied upon by the JCC created no problems under the facts involved in Sledge. In that case, the claimant had not "become actually incapacitated in any manner, due to his heart disease, from performing his duties as a fireman." Id. at 1233. Moreover, the Sledge court did not hold that the claimant was not entitled to any benefits. Instead, this court remanded and directed the deputy commissioner to consider the E/C's other defenses to entitlement. Id.
When applied to the instant case, however, the definition employed by the JCC leads to a result which is inconsistent with the statutory definition of disability and the purpose of the workers' compensation system. The JCC should have looked to the alternate definition of "disability" set out in Sledge: "Disablement means the event upon which the employee becomes actually incapacitated, partially or totally, from performing his employment." Id. That definition more closely reflects the statutory concept of "disability." See § 440.02(13), Fla. Stat. (2003) ("`Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.").
Determining whether a person is disabled for purposes of workers' compensation turns upon the person's capacity to earn income, not upon the employer's decision pay the injured person's salary while he or she is incapacitated. No dispute exists here that, during the periods in question, the claimant was incapable of performing his duties as fireman and, therefore, did not have the actual capacity to earn his wages as a fireman. As such, the claimant was disabled and the city's continued payment of the claimant's salary did not relieve E/C 2 of the burden of providing workers' compensation benefits. See Nolan v. Delta Airlines, 733 So.2d 1076, 1079 (Fla. 1st DCA 1999) (holding that "an employer may not avoid paying workers' compensation benefits by offering alternative benefits").
Accordingly, we hold that the JCC erred in finding E/C 1 liable for the payment of workers' compensation benefits arising from periods of disability occurring after E/C 2 came on risk. We further hold that the city's continued payment of the claimant's salary during his incapacity did not preclude a finding that the claimant was disabled. We VACATE the order and REMAND for further proceedings consistent with this opinion. The JCC will consider the statute of limitations defense raised by E/C 2 and matters raised by the claimant in avoidance.
ERVIN, KAHN and BENTON, JJ., concur.