959 So.2d 785 (2007)
ORANGE COUNTY FIRE RESCUE and Unisource Administrators, Inc., Appellants,
v.
Robert JONES, Appellee.
No. 1D06-4280.
District Court of Appeal of Florida, First District.
June 21, 2007.
Rehearing Denied July 17, 2007.
*786 Lamar D. Oxford and Frank C. Wesighan of Dean, Ringers, Morgan & Lawton, Orlando, for Appellants.
Todd J. Sanders, Kelli Biferie Hastings, and Paul A. Kelley of Bichler & Kelley, R.A., Winter Park, for Appellee.
PER CURIAM.
Orange County Fire Rescue and Unisource Administrators, Inc., the employer and carrier, appeal an order of the Judge of Compensation Claims (JCC) awarding Robert Jones (the claimant) permanent impairment benefits. We affirm the award of permanent impairment benefits.
The claimant was a firefighter with Orange County Fire Rescue who was first diagnosed with hepatitis C on February 23, 1992. The employer/carrier accepted the claimant's hepatitis C as a compensable occupational disease and authorized treatment. The employer and carrier paid temporary total disability benefits from December 22, 1992, until January 4, 1993, and from April 1, 1993, until April 11, 1993. Thereafter, the claimant returned to work full-time as a firefighter and continued to seek conservative treatment for his occupational disease.
On November 3, 1997, the claimant began treatment with interferon and ribavirin for his hepatitis C. The treatment left the claimant weak and dizzy and with flulike symptoms, and his doctor removed him from work for approximately four months during the course of this treatment. The employer and carrier paid indemnity benefits during this time. When the claimant finished the treatment in December of 1998, his doctor opined that the claimant was at maximum medical improvement (MMI), and the claimant was assigned a twenty percent impairment rating. Shortly thereafter, the claimant returned to work for the employer in his full capacity as a firefighter and has continued full-time since.
The claimant asserted a new date of accident on November 3, 1997, when he was required to leave work because of the effects of treating his disease.[1] This court *787 has consistently held that when a claim involves an occupational disease, the date of accident for the purpose of benefits is the date of disability  not the date of the diagnosis, exposure to, or contraction of the disease. See, e.g., Michels v. Orange County Fire/Rescue, 819 So.2d 158, 160 (Fla. 1st DCA 2002).
It is well-settled in occupational disease cases that the date of accident is determined by the date of disability, and disability is defined as the date the claimant became incapable of performing work in the last occupation in which he was exposed to the hazards of the disease. Accordingly, detection of an occupational disease does not necessarily coincide with the date of disablement from the disease.
Id. (citing § 440.151(1)(a), Fla. Stat. (1991) and (1997)) (other citations omitted). See also Fla. Power Corp. v. Brown, 863 So.2d 364, 365 (Fla. 1st DCA 2003) (reversing an order awarding medical monitoring in a case where the claimant was exposed to asbestosis, but not diagnosed with the disease, because the claimant had not (yet) suffered any injury, explaining that "an occupational disease becomes compensable only upon the employee's disablement [] in occupational disease cases, it is the disability, not the diagnosis of the disease, which determines compensability of a claim") (citation omitted); Hoppe v. City of Lakeland, 691 So.2d 585, 586-87 (Fla. 1st DCA 1997) ("`In occupational disease cases, . . . it is the disability and not the disease which determines the compensability of a claim.'") (quoting Am. Beryllium Co. v. Stringer, 392 So.2d 1294, 1295-96 (Fla.1980)); Sledge v. City of Fort Lauderdale, 497 So.2d 1231, 1233 (Fla. 1st DCA 1986) ("Disablement and the commencement of the running of the limitations period occurs when the disease condition results in a stoppage or loss of earnings. Disablement means the event upon which the employee becomes actually incapacitated, partially or totally, from performing his employment.") (quotation marks, alterations, and citations omitted).[2]
In the present case, the claimant was diagnosed with the disease in 1992 and missed a short period of work before continuing in his full-time employment. In 1997, the claimant's viral load increased to the extent that the doctor recommended interferon treatment. These treatments caused the claimant to miss three to four months of work because the doctor felt he *788 was unable to perform his duties at work as a result of the effects of the treatment.
For an employee to be entitled to benefits for a compensable occupational disease, the person must be disabled. See Michels, 819 So.2d at 160. `[D]isablement' "means the event of an employee's becoming actually incapacitated, partially or totally, because of an occupational disease, from performing her or his work in the last occupation in which injuriously exposed to the hazards of such disease. . . ." § 440.151(3), Fla. Stat. (1997).[3]See also Sledge, 497 So.2d at 1233. In the present case, the claimant became incapacitated from performing his work, according to the doctor's testimony, when he began the interferon treatment in November of 1997. The treatment was necessary due to the progression of his occupational disease. Thus, he was statutorily disabled at this time. The date of accident is the time such disability resulted in the inability to work  not the date of the diagnosis. Claimant suffered a new date of accident on November 3, 1997.
We reject the employer and carrier's argument that there cannot be more than one date of accident. In fact, in City of Mary Esther v. McArtor, 902 So.2d 942 (Fla. 1st DCA 2005), this court acknowledged the possibility of multiple dates of accident in occupational disease cases. In Mary Esther, the claimant was a firefighter who suffered his first heart attack in 1991, which was found to be compensable because of the statutory presumption in section 112.18(1), Florida Statutes, presuming that coronary artery disease was an occupational illness when suffered by a firefighter meeting certain requirements. He later suffered cardiac complications in 2001 and 2003. See id. at 943. Between 1991 and 2001, the City had changed insurance carriers. The court explained that only the carrier on the risk at the time of *789 the last injurious exposure was liable for the later episodes. Thus, the benefits paid for cardiac complications in 2001 and 2003 were paid by the new carrier, despite the prior incapacity in 1991. See id. at 943-44.
In addition, in Michels, the claimant missed work and received benefits in 1992 and in 1996 before becoming permanently impaired in 1998. Despite the claimant's prior periods of incapacitation, the court found that the date of accident was the latest date of incapacitation. See 819 So.2d at 160.
We also reject the employer and carrier's argument that there can be no new date of accident because hepatitis C is no longer recognized as an occupational disease for firefighters. The employer and carrier rely upon Seminole County Gov't v. Bartlett, 933 So.2d 550 (Fla. 1st DCA 2006), and Flamily v. City of Orlando, 924 So.2d 78 (Fla. 1st DCA 2006), for the proposition that hepatitis C can no longer be an occupational disease in any firefighter's case.
Both Bartlett and Flamily, however, rested upon the facts and testimony presented by the parties in those cases, where compensability was fully litigated. See Bartlett, 933 So.2d at 552 (finding that the claimant "failed to present sufficient evidence" that his hepatitis C was an occupational disease); Flamily, 924 So.2d at 79 (finding that the claimant did not present sufficient proof that his hepatitis C was an occupational disease). In the present case, the employer and carrier accepted the claimant's hepatitis C as a compensable occupational disease in 1992, and continued to pay benefits for seven years after the 1997 disablement, arguing only on the day of the hearing against entitlement to permanent impairment benefits and then only on the basis that Flamily and Bartlett precluded compensability of hepatitis C in all firemen's cases.
Because the date of accident in an occupational disease case is the date of disability next after a period of injurious exposure, and multiple periods of exposure took place here, the claimant suffered a new date of accident when, after a lengthy period of full-time employment, he missed work beginning on November 3, 1997. Therefore, the order awarding benefits based on a November 3, 1997, date of accident is AFFIRMED.
ALLEN and BENTON, JJ., concur; WEBSTER, J., dissents with opinion.
WEBSTER, J., dissenting.
The issue here is whether section 440.151, Florida Statutes (1991), may be read as contemplating the possibility of multiple accident dates based on periodic exacerbations of an occupational disease which the undisputed evidence establishes is incurable. Because I am unable to answer the question in the affirmative, I dissent.
It is undisputed that claimant was first diagnosed with hepatitis C in 1992. The employer and servicing agent accepted the claim as a compensable occupational disease, authorizing treatment and paying temporary total disability benefits for relatively brief periods in late 1992 and early 1993. Pursuant to section 440.151, claimant became disabled in late 1992, when he became "incapacitated . . . from performing his work in the last occupation in which injuriously exposed to the hazards of [the] disease." See § 440.151(3), Fla. Stat. (1991); City of Port Orange v. Sedacca, 953 So.2d 727 (Fla. 1st DCA 2007) (en banc). It is also undisputed that claimant's hepatitis C is incurable. It manifests itself by periods of relative dormancy and periods of exacerbation.
Effective January 1, 1994, the legislature provided for permanent impairment *790 benefits to become the primary permanent disability benefit. Ch. 93-415, § 20, at 122, Laws of Fla. (codified as § 440.15(3)(a), Fla. Stat.). Because the creation of permanent impairment benefits was a substantive change in the law, claimant is not entitled to the benefit of that change unless he can demonstrate that the 1997 exacerbation of his pre-existing hepatitis C amounted to a new injury. See Paulk v. Sch. Bd. of Palm Beach County, 615 So.2d 260, 261 (Fla. 1st DCA 1993) ("the parties' substantive rights under the Workers' Compensation Law are fixed at the time of the claimant's accident and injury") (citation omitted).
In Florida, the system of workers' compensation is entirely a creature of statute. Travelers Ins. Co. v. Sitko, 496 So.2d 920, 921 (Fla. 1st DCA 1986). Thus, we must look to the pertinent statute for the answer to the issue raised. That statute is section 440.151, Florida Statutes (1991), which is entitled "Occupational diseases." I find nothing in that section manifesting a clear intent to provide for the possibility of multiple accident dates in a case such as this. On the contrary, it seems to me that the language used by the legislature supports the opposite conclusion. It appears to me that the legislature contemplated that, as logic would seem to dictate, a person can contract an incurable disease only one time. Absent manifestation of a clear intent to permit the outcome reached by the majority, I would not ascribe to the legislature such an illogical result.
Finally, I note that City of Mary Esther v. McArtor, 902 So.2d 942 (Fla. 1st DCA 2005), and Michels v. Orange County Fire/Rescue, 819 So.2d 158 (Fla. 1st DCA 2002), on which the majority relies to support its conclusion, shed no light on the issue because there is nothing in either case to suggest that the issue of the possibility of multiple accident dates in a case of this kind was either raised or actually decided.
Because I can find no support in section 440.151 for the result reached by the majority, respectfully, I dissent.
NOTES
[1] Section 440.15(3)(a), Florida Statutes (1997), provides that once a claimant has reached MMI, impairment benefits are due within twenty days after the carrier has knowledge of the impairment. This provision requiring the payment of permanent impairment benefits for all permanent impairments was not introduced into the statute until 1994. (The prior version of the statute required permanent impairment benefits for permanent impairments due only to amputation, the loss of eighty percent or more of vision, or a serious facial or head disfigurement. See § 440.15(3)(a), Fla. Stat. (1993).) See Ch. 93-415, § 20 at 121, Laws of Fla. (amending section 440.15(3)(a) to provide permanent impairment benefits for all permanent impairments). Thus, employees with injuries occurring prior to 1994 are not entitled to permanent impairment benefits. Therefore, if the claimant's only date of injury/accident is in 1992, when he was first diagnosed with hepatitis C, he is not entitled to permanent impairment benefits. However, if the claimant is able to establish a new date of injury/accident in 1997, he is entitled to permanent impairment benefits.
[2] Most recently, in City of Port Orange v. Sedacca, 953 So.2d 727 (Fla. 1st DCA 2007) (en banc), the court explained that a claimant's disease did not result in "disablement" under the statute until a claimant suffered wage loss. Id. at 733. (citing Michels v. Orange County Fire/Rescue, 819 So.2d 158, 160 (Fla. 1st DCA 2002)).

"Disablement means the event upon which the employee becomes actually incapacitated, partially or totally, from performing his employment." [Sledge v. City of Fort Lauderdale, 497 So.2d 1231, 1233 (Fla. 1st DCA 1986).] That definition more closely reflects the statutory concept of "disability." See § 440.02(13), Fla. Stat. (2003) ("`Disability' means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.").
City of Mary Esther v. McArtor, 902 So.2d 942, 944 (Fla. 1st DCA 2005).
[3] Section 440.151, Florida Statutes (1997), provides in pertinent part:

(1)(a) Where the employer and employee are subject to the provisions of the Workers' Compensation Law, the disablement or death of an employee resulting from an occupational disease as hereinafter defined shall be treated as the happening of an injury by accident, notwithstanding any other provisions of this chapter, and the employee . . . shall be entitled to compensation as provided by this chapter, except as hereinafter otherwise provided; and the practice and procedure prescribed by this chapter shall apply to all proceedings under this section, except as hereinafter otherwise provided. Provided, however, that in no case shall an employer be liable for compensation under the provisions of this section unless such disease has resulted from the nature of the employment in which the employee was engaged under such employer and was actually contracted while so engaged, meaning by "nature of the employment" that to the occupation in which the employee was so engaged there is attached a particular hazard of such disease that distinguishes it from the usual run of occupations, or the incidence of such disease is substantially higher in the occupation in which the employee was so engaged than in the usual run of occupations. . . .
. . . .
(2) Whenever used in this section the term "occupational disease" shall be construed to mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment, and to exclude all ordinary diseases of life to which the general public is exposed, unless the incidence of the disease is substantially higher in the particular trade, occupation, process, or employment than for the general public.
(3) Except as hereinafter otherwise provided in this section, "disablement" means the event of an employee's becoming actually incapacitated, partially or totally, because of an occupational disease, from performing her or his work in the last occupation in which injuriously exposed to the hazards of such disease; and "disability" means the state of being so incapacitated.